J-A22015-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                    :          PENNSYLVANIA
                                    :

            v.                       :

                                    :

SHAQUARN TONY DARYL JACKSON   :

                                    :

           Appellant           :     No. 294 MDA 2021

Appeal from the Judgment of Sentence Entered January 27, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0004664-2019

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY BOWES, J.:          **FILED: FEBRUARY 8, 2022**

Shaquarn Tony Daryl Jackson appeals from judgment of sentence of twenty-four to forty-eight months of incarceration imposed after a jury convicted him of carrying a firearm without a license and receiving stolen property ("RSP"). We affirm.

On October 21, 2019, Pennsylvania State Police Trooper Thomas Fleisher was patrolling I-78 in Berks County when he encountered a teal Volvo with tinted windows. *See* N.T. Jury Trial, 10/19/20, at 20-23. As the Volvo pulled into the parking lot of Bethel Truck Service, Trooper Fleisher initiated a traffic stop. *Id*. The vehicle contained three occupants: Travis Price ("Price"), the operator; Appellant, the front seat passenger; and Matthew Woodstein ("Woodstein"), the back seat passenger. *Id*. at 23, 46. The full interaction between Trooper Fleisher, Price, Woodstein, and Appellant was captured on

the mobile video recorder ("MVR") on Trooper Fleisher's vehicle. *Id*. at 37; *see also* Commonwealth Exhibit 9.

Trooper Fleisher approached an open back right passenger window, introduced himself, and explained that he had stopped the vehicle due to its tinted windows. He asked Price for his driver's license and registration. Price responded that he did not have a valid driver's license. Trooper Fleisher asked Price to write down his name and date of birth, and then asked whether Woodstein and Appellant could provide him with photo identification. All three men complied with his instructions and Trooper Fleisher returned to his vehicle with their information.

Fifteen minutes later Trooper Justin Hope arrived. *Id*. at 25. Trooper Fleisher and Trooper Hope approached the vehicle simultaneously, but from opposite sides. Through the open rear passenger window, Trooper Fleisher asked Woodstein to exit the vehicle. Meanwhile, Trooper Hope engaged Price in conversation. Their conversation was not picked up by Trooper Fleisher's microphone. Trooper Fleisher then handcuffed Woodstein and informed him that he was being detained due to a warrant out of York County for drugs. *Id*.

As Trooper Fleisher was detaining Woodstein, Price exited the driver's side of the vehicle and walked towards Trooper Fleisher. Price asked Trooper Fleisher if he could give Woodstein some money and where they were taking him. *Id*. Trooper Fleisher answered his questions and the two discussed the particulars of the drug warrant for Woodstein's arrest. Trooper Fleisher asked

Price if he had any drugs in his vehicle. Price responded that he did not. Trooper Fleisher inquired whether he could search the vehicle to confirm that, and Price said "sure." *See* Commonwealth Exhibit 9. Trooper Fleisher read the consent form to Price, who signed it without hesitation or qualification. Trooper Fleisher asked Appellant to exit the vehicle so that he could complete the vehicle search. Appellant and Price were patted down before being asked to stand to the side of the car. Trooper Fleisher completed the search while Trooper Hope conversed with Appellant and Price.

For the next ten minutes, Trooper Fleisher conducted a search of the vehicle.[1] Inside a fuse panel to the left of the steering wheel, Trooper Fleisher discovered a magazine containing 9-millimeter rounds. *Id*. at 25-26, 28-29. Minutes later, he located an unloaded Kel Tec 9-millimeter pistol under the Volvo's hood on the driver's side of the vehicle. *Id*. at 26, 29, 48, 50. The pistol was inside of a sock and wedged between the Volvo's frame and either the air filter or battery. *Id*. at 26. After discovering the firearm, Trooper Fleisher immediately placed Price in handcuffs, while another trooper cuffed Appellant. Out of view of the camera, they were read their *Miranda*[2] warnings together. *Id*. at 31, 35, 49.

---

[1] While Appellant was standing out of view of the camera during this time, Price can be seen moving around freely, using his cell phone, and drinking from a water bottle that Trooper Hope had retrieved from the vehicle.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Trooper Fleisher told Price and Appellant that he found a firearm and a magazine in the vehicle.  He indicated that, while neither man was obligated to speak with him, he planned to arrest both for conspiracy to possess the firearm if no one claimed responsibility for it.  He then placed Appellant inside of Trooper Hope's vehicle so that he could retrieve the weapon from the hood of the car.  Thereafter, Price spontaneously uttered "this is no good." **See** Commonwealth Exhibit 9.  Trooper Fleisher responded to Price's remark by repeating the **Miranda** warnings before asking Price whose gun it was.  Price was adamant that the gun did not belong to him but did not want to reveal who the true owner was.  He asked to speak privately with Appellant, which the troopers allowed since they were brothers.  **Id**. at 36.

After a couple minutes, Trooper Fleisher approached the two men and asked if there was anything they wanted to tell him.  Appellant immediately responded, "It's mine."  Appellant then volunteered that he had recently purchased the pistol and magazine for $200 from "somebody walking around down here" and that he intended to use the weapon for protection.  Appellant claimed that he had placed both items in the vehicle without Price's knowledge.  **Id**. at 36, 43, 44.  Trooper Fleisher asked if Appellant had a license to carry the firearm and Appellant conceded that he did not.  **Id**. at 42.  Throughout the conversation, Appellant was "adamant" that he was not

lying. *Id*. at 41. Based on his admissions, Appellant was arrested and charged with firearms offenses and RSP.[3]

On December 17, 2019, Appellant filed an omnibus pretrial motion seeking suppression of the evidence, suppression of his confession, and *habeas corpus* relief. Appellant argued that the traffic stop was illegal, and all evidence acquired as a result of the stop should be suppressed as fruit of the poisonous tree. The trial court scheduled a hearing on the motion for January 30, 2020, at 1:30 p.m. When Appellant was not present at 1:40 p.m., the court dismissed the motion and issued a warrant for Appellant's arrest. Appellant's counsel did not object to the dismissal or ask to proceed without Appellant. Appellant appeared later that day, at which time counsel asked the court for a new trial date due to outstanding discovery. Counsel did not ask the court to reconsider the denial of the suppression motion.

On October 19, 2020, Appellant proceeded to a jury trial. After the Commonwealth closed its case-in-chief, defense counsel orally renewed the suppression motion. *See* N.T. Jury Trial, 10/19/20, at 61. After a brief discussion in chambers, the trial court found that the stop was a "valid legal stop." *Id*. Since all of Appellant's arguments stemmed from his allegation that the stop was illegal, the court denied the motion. *Id*. Thereafter, the

---

[3] Subsequent investigation led to the discovery that the pistol was owned by Donald John ("John"), who had reported his pistol stolen on February 25, 2020. N.T. Jury Trial, 10/19/20, at 30, 56. John did not know Appellant and had not given him, Price, or Woodstein permission to possess the firearm. *Id*. at 57. The pistol was tested and found to be operable. *Id*. at 59-60.

jury found Appellant guilty of carrying a firearm without a license and RSP. *Id*. at 83.

On January 13, 2021, at his scheduled sentencing hearing, Appellant made an oral motion for extraordinary relief. *See* N.T., 1/13/21, at 2. Appellant requested a new trial based on our Supreme Court's decision in *Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020), which changed the law on warrantless vehicle searches. The court took the motion under advisement, ultimately denying it by order of January 26, 2021. The next day, Appellant was sentenced to serve an aggregate term of twenty-four to forty-eight months in a state correctional facility. A timely post-sentence motion was denied, and this appeal followed. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Whether the trial court erred when it dismissed Appellant's pretrial motion with prejudice without a hearing when Appellant was late for court?

2. Whether the trial court erred in denying Appellant's [oral] motion to suppress raised after the Commonwealth's case in chief that the stop of the vehicle lacked probable cause or reasonable suspicion of criminal activity?

3. Whether the trial court erred in denying Appellant's [oral] motion to suppress raised after the Commonwealth's case in chief that the warrantless search of the vehicle exceed[ed] the consent that a typical reasonable person would have understood?

4. Whether the evidence [was] insufficient to sustain the verdicts in this case for the fact that Appellant's statement

was not voluntary and should not have been considered as evidence?

Appellant's brief at 16.

In his first claim, Appellant argues that the trial court abused its discretion when it denied Appellant's suppression motion because Appellant failed to appear in court at the time and date allocated for the suppression hearing. *See* Appellant's brief at 28-33. We find this issue waived because counsel failed to object at the suppression hearing. It is well-established that "[t]he absence of a contemporaneous objection below constitutes a waiver of the claim on appeal." *Commonwealth v. Rodriguez*, 174 A.3d 1130, 1145 (Pa.Super. 2017) (citation omitted). Our Supreme Court has stated:

> [I]t is axiomatic that issues are preserved when objections are made timely to the error or offense. *See Commonwealth v. May*, 887 A.2d 750, 761 (Pa. 2005) (holding that an "absence of contemporaneous objections renders" an appellant's claim waived); and *Commonwealth v. Bruce*, 916 A.2d 657, 671 (Pa.Super. 2007) (holding that a "failure to offer a timely and specific objection results in waiver of" the claim). Therefore, we shall consider any issue waived where Appellant failed to assert a timely objection.

*Commonwealth v. Baumhammers*, 960 A.2d 59, 73 (Pa. 2008). Including an issue in a Pa.R.A.P. 1925(b) statement does not "resurrect" a waived claim. *Rodriguez*, *supra* at 1145 n.6 (citation omitted).

In this case, a suppression hearing was scheduled for January 30, 2020, at 1:30 p.m. Defense counsel, the prosecutor, and Commonwealth witnesses were present and "ready to go" at 1:30 p.m. N.T. Motion Hearing, 1/30/20, at 2. At 1:40 p.m., the trial court began the hearing. *Id*. After defense

counsel confirmed that he had told Appellant the correct date and time, that Appellant was not present, and that he did not know where Appellant was, the trial court issued an order dismissing the suppression motion. *Id*. at 2-3. Counsel did not object. *Id*. The Commonwealth requested a bench warrant for Appellant, which was granted. *Id*. at 3. Sometime later that day, Appellant appeared.[4] *Id*. at 3. The trial judge, who was still on the bench, rescinded its earlier authorization for a bench warrant and defense counsel, who also was present, requested a new trial date. *Id*. at 3. After the new date was agreed upon, the hearing concluded. *Id*. Again, counsel did not object or request that the court reconsider its dismissal of the suppression motion. *Id*.

Hence, it is plain from the certified record that Appellant's counsel failed to make a timely objection to the trial court's dismissal of the suppression motion due to Appellant's failure to appear. Furthermore, after Appellant arrived, defense counsel did not ask the court to reconsider its decision. Instead, counsel proceeded to discuss scheduling matters and outstanding

---

[4] In his brief, Appellant asserts that he arrived ten to twenty minutes after the motion was dismissed. *See* Appellant's brief at 17. However, he does not cite anything in the record for support and our review of the record did not reveal what time Appellant arrived that day.

discovery pertaining to trial. Thus, Appellant's first issue is waived. *See May*, *supra* at 758.[5]

Appellant's remaining claims relate to the trial court's finding of a legal traffic stop. Preliminarily, we note that,

> [a]n appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa.Super. 2017) (cleaned up).

"The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable

---

[5] Even if properly preserved, any error was harmless because the court ultimately considered the same suppression claims mid-trial that Appellant had raised in his pre-trial motion. *See* N.T. Jury Trial, 10/19/20, at 61. *See also Commonwealth v. Abbas*, 862 A.2d 606 (Pa.Super. 2004) (finding that "any error that may have occurred [from the dismissal of the pretrial motion due to appellant's absence] was harmless because the issues raised in the motion, in particular the issues of suppression of Abbas' statements and the photographs, were thoroughly addressed and resolved at trial.").

searches and seizures, including those entailing only a brief detention."

***Commonwealth v. Reppert***, 814 A.2d 1196, 1201 (Pa.Super. 2002) (*en banc*) (citation omitted).

> A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies. One such exception is consent, voluntarily given. The central Fourth Amendment inquiries in consent cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent; and, ultimately, the voluntariness of consent. Where the underlying encounter is found to be lawful, voluntariness becomes the exclusive focus.

***Commonwealth v. Strickler***, 757 A.2d 884, 888-89 (Pa. 2000) (footnotes and citations omitted).

## I. The Legality of the Traffic Stop

First, Appellant argues that Trooper Fleisher lacked reasonable suspicion or probable cause to stop the vehicle for tinted windows, since the Motor Vehicle Code violation was not established, the investigation following the stop did not target the suspected window tint, and Appellant was never ticketed for tinted windows. **See** Appellant's brief at 34. The issue of what level of cause a police officer must possess to conduct a vehicle stop based on a possible violation of the Motor Vehicle Code is a question of law, over which our scope of review is plenary and our standard of review is *de novo*. **See** ***Commonwealth v. Chase***, 960 A.2d 108 (Pa. 2008).

Generally, a traffic stop must be supported by sufficient facts to provide an officer with reasonable suspicion to believe that the vehicle or driver was

in violation of a provision of the Motor Vehicle Code.[6]  **See** 75 Pa.C.S. § 6308(b).[7]  However, a stop based on reasonable suspicion under §6308(b) must "serve an investigatory purpose relevant to the suspected violation." ***Commonwealth v. Salter***, 121 A.3d 987 (Pa.Super. 2017); ***see also*** ***Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa. 2010) (*en banc*). Therefore, in circumstances where the violation is such that it requires no additional investigation, the officer must possess probable cause before initiating the traffic stop.[8]  ***See Commonwealth v. Harris***, 176 A.3d 1009, 1019 (Pa.Super. 2017).

_____

[6]  To establish reasonable suspicion, an officer "must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, [lead] him to reasonably conclude, in light of his experience, that criminal activity is afoot" and that the item to be searched was involved in that activity.  ***Commonwealth v. Basinger***, 982 A.2d 121, 125 (Pa.Super. 2009).

[7] Section 6308(b) provides:

> **Authority of police officer** – Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has **reasonable suspicion** that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b) (emphasis added).

[8]  Probable cause exists where "the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief
*(Footnote Continued Next Page)*

Put another way, if the officer has a legitimate expectation of investigatory results, the existence of reasonable suspicion will allow the stop—if the officer has no such expectations of learning additional relevant information concerning the suspected criminal activity, the stop cannot be constitutionally permitted on the basis of mere suspicion.

***Commonwealth v. Brown***, 64 A.3d 1101, 1105 (Pa.Super. 2013) (citation omitted).

Herein, it is uncontradicted that Trooper Fleisher stopped the vehicle for an alleged window tint violation under 75 Pa.C.S. § 4524(e)(1). Section 4524(e) states, in pertinent part:

**(e) Sun screening and other materials prohibited**.—

(1) No person shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle.

(2) This subsection does not apply to:

(i) A vehicle which is equipped with tinted windows of the type and specification that were installed by the manufacturer of the vehicle or to any hearse, ambulance, government vehicle or any other vehicle for which a currently valid certificate of exemption has been issued in accordance with regulations adopted by the department.

(ii) A vehicle which is equipped with tinted windows, sun screening devices or other

---

that an offense has been or is being committed." ***Commonwealth v. Martin***, 101 A.3d 706, 721 (Pa. 2014). When making a probable cause determination, we consider the totality of the circumstances from the vantage point of a "prudent, reasonable, cautious police officer on the scene at the time." ***Id***.

> materials which comply with all applicable Federal regulations and for which a currently valid certificate of exemption for medical reasons has been issued in accordance with regulations adopted by the department.

75 Pa.C.S. § 4524(e)(1), (e)(2)(i)-(ii).

A violation of §4524(e)(1) is established if an officer is unable to see inside the vehicle through the windshield, side wing, or side window of the vehicle. *Id*. Pennsylvania appellate courts have interpreted §4524(e) and found that an officer who observes a window-tint violation under §4524(e)(1) has no burden to confirm that an (e)(2) exception does not apply. *See Commonwealth v. Rodriguez*, 81 A.3d 103, 106 (Pa.Super. 2013). Rather, the §4524(e)(2) exceptions function as affirmative defenses to criminal culpability, which the defendant may choose to raise at trial. *Id*. at 106 (finding that the appellant was not entitled to application of the manufacturer-tint exception because he presented no argument or evidence related to the installation of the tinted windows in his vehicle).

Since further investigation, beyond the officer's initial observations, would provide no additional information as to whether a violation of §4524(e)(1) occurred, we have held that officers must possess probable cause before initiating a traffic stop based on a window-tint violation. *See Prizzia*, *supra* at 270 (finding that a police officer had probable cause to stop a vehicle for a violation of §4524(e) where he could not see the operator through the window). Probable cause is established where an officer observes that the

tint on the vehicle's windows is so dark that it prohibits the officer from seeing inside the car. ***See Harris***, ***supra*** at 1019 ("Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense.").

Here, the trial court found that Trooper Fleisher credibly testified that the sole basis for the traffic stop was tinted windows. ***See*** Trial Court Opinion, 4/21/21, at 7; ***see also*** N.T., 10/19/20, at 45 (Trooper Fleisher testifying that he pulled the vehicle over for tinted windows). While Trooper Fleisher was not asked to expand on which windows he had difficulty seeing through, the court reviewed the MVR of the traffic stop and found that it corroborated the trooper's testimony. ***Id***. Specifically, the court found that the vehicle had "significant window tint." ***Id***.

We find no abuse of discretion since the suppression court's factual findings are supported by the record. The facts demonstrated that Trooper Fleisher could discern from his initial observation of the vehicle that the window tint violated §4521(e) because he could not see into the car. Considering the trial court's specific finding that the trooper's testimony was credible, and our own review of the video, we find no abuse of discretion in its holding that the trooper possessed the requisite probable cause to conduct the traffic stop. ***See Prizzia***, ***supra*** at 270 ("[T]o possess probable cause that a vehicle is in violation of section 4524(e)(1), an officer must only observe

that the tint on the vehicle's windows is so dark that it prohibits the officer from seeing inside the car.").

Furthermore, we find no merit to Appellant's secondary argument that the stop was illegal because he was not issued a citation for tinted windows. Since the vehicle did not belong to Appellant and he was not the one driving, he would not have been issued a citation for tinted windows. **See** 75 Pa.C.S. § 4524(e)(1) (criminalizing driving a vehicle with tinted windows, not riding in one). Additionally, the law does not require a tinted window citation to be issued to legitimize the probable cause basis for the stop. **See Commonwealth v. Postie**, 110 A.3d 1034, 1040 (Pa.Super. 2015) (finding the fact that the appellant was not issued a citation for tinted windows had no bearing on whether the officer had probable cause to pull the vehicle over). Accordingly, we do not disturb the trial court's holding that the initial traffic stop was legal.

## II. Legality of the Consent to Search the Vehicle

Next, Appellant contends that Price's consent to search the vehicle was involuntarily given because it was derived from the unlawful traffic stop. **See** Appellant's brief at 36-41. While Appellant acknowledges that such a challenge would generally require him to make a preliminary showing of standing and a reasonable expectation of privacy, he has not done so here. Instead, Appellant argues that he did not need to demonstrate a privacy interest in the area where the evidence was seized because the search was

derived from an illegal seizure. *See id*. at 36 n.2. According to Appellant, even if we find the initial stop lawful, the trial court still erred because the stop was unlawfully prolonged past the time needed to issue a ticket for the tinted windows. *Id*. Since Price's consent was coerced as a result, Appellant alleges that all evidence retrieved should have been excluded as fruit of the poisonous tree pursuant to *Commonwealth v. Shabezz*, 166 A.3d 278, 287 (Pa. 2019). We disagree.

Generally, before we may proceed to a determination of an appellant's substantive suppression claim, we must first discern whether the appellant has established standing to challenge the search of the automobile and a privacy interest in the contents of it. *See Commonwealth v. Burton*, 973 A.2d 428, 434-35 (Pa.Super. 2009). Our Supreme Court has emphasized that these are distinct analyses:

> While curiously similar, standing and privacy interest are different concepts serving different functions. Standing is a legal interest that empowers a defendant to assert a constitutional violation and thus seek to exclude or suppress the government's evidence pursuant to the exclusionary rules under the Fourth Amendment of the United States Constitution or Article 1, Section 8 of the Pennsylvania Constitution. It ensures a defendant is asserting a constitutional right of his own. The expectation of privacy is an inquiry into the validity of the search or seizure itself; if the defendant has no protected privacy interest, neither the Fourth Amendment nor Article I, § 8 is implicated. In essence, while a defendant's standing dictates when a claim under Article I, § 8 may be brought, his privacy interest controls whether the claim will succeed – once a defendant has shown standing, he must, in short, having brought his claim, demonstrate its merits by a showing of his reasonable and legitimate expectation of privacy in the premises.

*Commonwealth v. Enimpah*, 106 A.3d 695, 698-99 (Pa. 2014) (citations and quotation mark omitted).

Appellant argues that he has standing to pursue a motion to suppress the contents of the vehicle because he was charged with a possessory offense. *See* Appellant's brief at 36 n.2. We agree. Since Appellant was charged with a possessory offense, he automatically has standing to challenge the suppression of the items seized. *See Commonwealth v. Viall*, 890 A.2d 419, 421 (Pa.Super. 2005). However, whether Appellant needed to establish a legitimate expectation of privacy in the vehicle's contents is a closer question, which Appellant argues is governed by *Shabezz*.

In *Shabezz*, our Supreme Court addressed the question of whether, following an unconstitutional vehicle stop, the Fourth Amendment required a passenger to demonstrate a reasonable expectation of privacy in those areas of the vehicle that were searched and that yielded incriminating evidence. *Shabezz*, *supra* at 284. It was undisputed that the stop was illegal and that the passenger had no privacy interest in the vehicle. *Id*. Our High Court ruled that evidence derived from an illegal automobile search constituted fruit of the poisonous tree because of the illegal seizure. Accordingly, no further demonstration of a privacy interest in the area from which the evidence was seized was required by the Fourth Amendment. *Id*. at 287-89 (rejecting the Commonwealth's argument that the passenger must demonstrate a

reasonable expectation of privacy in the areas of the vehicle where the incriminating evidence was found regardless of the legality of the stop).

The *Shabezz* holding created a narrow exception to the general requirement that defendants must demonstrate standing and a privacy interest in the relevant area before the merits of their suppression motion can be assessed. After *Shabezz*, those defendants who had standing and were subject to an illegal unconstitutional seizure no longer needed to show that they also had a privacy interest before their claims could be adjudicated on the merits. *See Commonwealth v. Yount*, ___ A.3d ___, 1343 WDA 2020, 2021 WL 5121283, at *5 (Pa.Super. 2021) (non-precedential decision) ("Because we conclude that the initial traffic stop was illegal, we also agree with the suppression court's conclusion that Appellee was not required to establish an expectation of privacy in the vehicle."). Herein, we have already determined that the initial traffic stop was legal. However, the subsequent request to search the vehicle came after the purpose of the initial detention had been accomplished. Thus, the issue of whether Appellant can invoke the exception carved out by *Shabezz* depends on whether the continuation of the traffic stop rendered it illegal. For the reasons that follow, we find that it did not.

It is well-established that the level of police-citizen interaction may alter over the course of one incident. Therefore, our analysis of the legality of a particular search or seizure is fact specific and considered in light of the totality

of the circumstances. *See In re D.M.*, 781 A.2d 1161, 1163 (Pa. 2001). For example, what began as an investigative detention may devolve into a mere encounter. *See Strickler*, *supra*. Alternatively, what started as a stop supported by probable cause may transform into a continued detention buoyed by reasonable suspicion. *See Prizzia*, *supra*.

In *Prizzia*, a trooper initiated a legal traffic stop after he observed tinted windows. When he approached the operator, he immediately noticed signs of impairment. The results of field sobriety testing and a blood draw revealed that the operator was driving while impaired by a controlled substance. A warrantless consent search of her vehicle uncovered Klonopin pills for which she did not have a prescription. The operator was arrested and, after unsuccessfully litigating a suppression motion, was convicted of driving under the influence and related charges. On appeal, the operator argued that the stop was unlawfully prolonged past the time needed to issue a ticket for the window-tint violation, thus coercing her consent to the vehicle search. We disagreed, affirming the denial of her suppression motion on the grounds that the trooper "possessed reasonable suspicion, independent from his probable cause for the window-tint violation, that Appellant was driving under the influence of narcotics. Thus, he was justified in extending the duration of the traffic stop to further investigate the DUI offense." *Id*. at 272.

Similar to what occurred in *Prizzia*, the initial stop due to tinted windows in the instant case was valid since Trooper Fleisher observed a traffic

code violation. Trooper Fleisher approached the vehicle and requested license and registration documentation. *See* 75 Pa.C.S. § 6308(b). Price immediately admitted that he did not have a valid driver's license. *See* Commonwealth Exhibit 9. Since driving a motor vehicle without a license or with a suspended license was an additional violation of the motor vehicle code, Price's response merited further inquiry. *See* 75 Pa.C.S. § 1543 (driving while operating privilege is suspended or revoked). *See also* 75 Pa.C.S. § 1501 (driving without a valid license). Thus, like the officer in *Prizzia*, Trooper Fleisher had the additional reasonable suspicion that he needed to extend the traffic stop while he investigated whether Appellant or someone else was capable of driving the vehicle.

During the ensuing fifteen minutes, Trooper Fleisher discovered that Woodstein had an active warrant for his arrest. Trooper Fleisher then had probable cause to arrest Woodstein, which he did approximately twenty minutes into the traffic stop. While Trooper Fleisher was detaining Woodstein, Price exited his vehicle and engaged in a conversation with Trooper Fleisher. The conversation centered on Woodstein's arrest warrant for a drug case out of York County, but ended when Price gave consent to search his vehicle. The interaction between Price and Trooper Fleisher lasted approximately three minutes. The consent-to-search form was executed twenty-six minutes into the stop. During the ensuing ten-minute vehicle search, Price gave no indication that the intrusiveness of the search was exceeding the scope of his

consent. Instead, he continued to cooperate with Trooper Fleisher, even volunteering to open the trunk when he observed Trooper Fleisher struggling with the latch.

Accordingly, Trooper Fleisher possessed reasonable suspicion, independent from his probable cause for the window-tint violation, that Price was driving with a suspended license. Thereafter, he acquired probable cause to arrest Woodstein on the outstanding warrant. Thus, he was justified in extending the duration of the traffic stop to further investigate Price's licensure and to arrest Woodstein. Consequently, unlike in **Shabezz** where the search followed an illegal stop, the consent search in the instant case occurred after legitimate initial and extended seizures. Accordingly, **Shabezz** is inapplicable here and Appellant was not absolved of his responsibility to show an expectation of privacy in the vehicle. This he has not done.

According to the Commonwealth's evidence, the vehicle was registered to Price, who was operating it at the time of the traffic stop. N.T. Jury Trial, 10/19/20, at 23. Although it was revealed that Price was Appellant's brother, Appellant had no other connection to the vehicle. *Id*. at 36. Given his tenuous connection to the vehicle, and no indication of a privacy interest by Appellant in any part of the vehicle, we find that Appellant's personal privacy rights were not violated. Accordingly, he cannot mount a successful challenge to the consent search of Price's vehicle. *See Commonwealth v. Millner*, 888 A.2d at 680, 692 (Pa. 2005) ("[A] defendant cannot prevail upon a suppression

motion unless he demonstrates that the challenged police conduct **violated his own, personal privacy interests**.") (emphasis added).  No relief is due on this issue.[9]

## III. Legality of Appellant's Confession

In his final claim, Appellant alleges that the inculpatory statement he made was not the product of his free will.  Appellant asserts that the trial court therefore erred by admitting it into evidence.  As detailed above, in his statement to police, Appellant claimed ownership of the firearm, conceded that he did not have a license to carry the firearm, and confessed to purchasing the weapon for $200 from someone on the street.  Appellant argues that his inculpatory statement was involuntary because he was subjected to a lengthy illegal traffic stop and police trickery; thus, his confession was coerced.  We disagree.

---

[9]   Appellant also argues that the warrantless search was not authorized pursuant to ***Commonwealth v. Alexander***, 243 A.3d 177 (Pa. 2020).  ***See*** Appellant's brief at 44-45.  Appellant did not raise this issue in his Rule 1925(b) statement, therefore, it is waived.  ***See*** Pa.R.A.P. 1925(b)(4)(vii).  Even if not waived, the issue lacks merit.  In ***Alexander***, the Court held that officers required probable cause and exigent circumstances before conducting a warrantless search of a vehicle.  However, in this case Price gave consent to search the vehicle.  Consent, where voluntarily given, functions as an exception to the warrant requirement.  ***See Commonwealth v. Strickler***, 757 A.2d 884, 888-89 (Pa. 2000). Accordingly, since Price consented to the search of his vehicle, and Appellant is unable to attack the validity of that consent, the ***Alexander*** holding does not apply.

When assessing the voluntariness of a confession, we consider the totality of the circumstances. *See Commonwealth v. Bryant*, 67 A.3d 716, 724 (Pa. 2013). The factors that guide our review are well-established:

> The duration and means of the interrogation, including whether questioning was repeated, prolonged, or accompanied by physical abuse or threats thereof; the length of the accused's detention prior to the confession; whether the accused was advised of his or her constitutional rights; the attitude exhibited by the police during the interrogation; the accused's physical and psychological state, including whether he or she was injured, ill, drugged, or intoxicated; the conditions attendant to the detention, including whether the accused was deprived of food, drink, sleep, or medical attention; the age, education, and intelligence of the accused; the experience of the accused with law enforcement and the criminal justice system; and any other factors which might serve to drain one's powers of resistance to suggestion and coercion.

*Id*. (citing *Commonwealth v. Perez*, 845 A.2d 779, 787 (Pa. 2004)). Our Supreme "Court has applied the totality of circumstances test with no less force or vigor in cases where there was a claim that a promise or inducement rendered the confession involuntary." *Commonwealth v. Templin*, 795 A.2d 959, 963-64 (Pa. 2002).

> In determining voluntariness, the question is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess. By the same token, the law does not require the coddling of those accused of crime. One . . . need not be protected against his own innate desire to unburden himself.

*Id*. at 966 (citations and quotations omitted).

According to Appellant, his confession was the product of police coercion because Trooper Fleisher aggressively handcuffed him and Price and

- 23 -

threatened that they would both be arrested for conspiracy to possess the firearm if neither confessed ownership. *See* Appellant's brief at 48-50. While Appellant concedes that Trooper Fleisher read him his ***Miranda*** warnings, he nonetheless argues that this did nothing to dissipate the coercive atmosphere created by the Trooper's other statements.

After reviewing the MVR, the trial court disagreed. The trial court found that Appellant's confession was voluntary and explained its reasoning as follows:

> A review of the totality of the circumstances and the ***Bryant*** factors clearly establishes that [Appellant's] statement was voluntary and admissible at trial. On the video introduced at trial, [Appellant] immediately confessed to being the owner of the firearm after talking with Price. He subsequently admitted to possessing the magazine. The questioning of [Appellant] lasted for [eight] minutes. The means of interrogation was in the form of questions from Trooper Fleisher. The questioning was not repeated, prolonged or accompanied by physical abuse or threats of physical abuse. Prior to the confession, [Appellant] was seated in the Volvo for about [twenty-five] minutes before the vehicle was searched. He was then removed from the vehicle prior to the search and taken into custody [ten] minutes later after the search had been completed. [Eleven] minutes elapsed between [Appellant's] arrest and his confession. The total length of [Appellant's] detention before his confession was [forty-six] minutes which was not excessive or unreasonable under the circumstances. [Appellant] was also advised of his constitutional rights upon his arrest and before he made any statements. During the questioning, Trooper Fleisher's attitude exhibited with [Appellant] was conversational and polite. He did not raise his voice or demand a statement from [Appellant]. There was no evidence that [Appellant's] psychological state was compromised or impaired in any way. [Appellant] was not deprived of food, drink or sleep and did not need medical attention. There was no indication that [Appellant's] age, education, or intelligence prohibited him from making a voluntary statement.

Trial Court Opinion, 4/21/21, at 12.

The certified record supports the court's findings. While Appellant was handcuffed, we do not find that circumstance alone rendered the atmosphere so coercive as to deprive Appellant of his own free will. The interview was short, and Appellant was read his *Miranda* warnings and told that he did not need to talk with the Trooper before any questions were asked. When Detective Fleisher spoke to Appellant, he used a calm voice, and the questioning never became accusatory or threatening. While Trooper Feisher told Appellant that he planned to charge both with possessory offenses if neither confessed, he made no threats or promises of leniency in exchange for his cooperation. In turn, Appellant responded politely and remained conversational throughout the brief interview. The only time Appellant raised his voice was when he became "adamant" that Trooper Fleisher believe that the gun belonged only to him and his benign reasons for procuring it. *See* N.T. Jury Trial, 10/19/20, at 36. *See also* Commonwealth Exhibit 9.

Since the record supports the trial court's findings, we do not disturb its conclusion that Appellant's statement was voluntarily given. *See Templin*, *supra* at 966 (holding that promising a recommendation of ROR bail at arraignment did not automatically invalidate the appellant's confession where his *Miranda* rights were explained, the interview lasted only an hour, and

there was no physical intimidation).  Thus, Appellant's remaining claim fails, and no relief is due.[10]

Judgment of sentence affirmed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/08/2022

---

[10]  In his statement of questions, Appellant attacks the sufficiency of the evidence on the grounds that his confession was involuntary and should not have been considered as evidence.  **See** Appellant's brief at 16.  Without Appellant's confession, he contends that the evidence was insufficient to sustain his conviction.  **Id**.  However, Appellant did not advance this sufficiency argument in the body of his brief.  Accordingly, it is waived.  Regardless, the claim would fail since we do not review sufficiency claims on a diminished record.  **See Commonwealth v. Koch**, 39 A.3d 996, 1001 (Pa.Super. 2011).  Consequently, any sufficiency examination would have been unaffected by the admissibility of Appellant's confession.